STATE OF MAINE                                  SUPERIOR COURT
CUMBERLAND, ss.                                 CIVIL ACTION
                                                Docket No. RE-2016-292

LESLIE FISSMER, Individually and    )
as Trustee of the LESLIE S.         )
FISSMER REVOCABLE TRUST,            )
PATRICIA GRAMSE and R. REED         )
GRAMSE, KAREN BURKE and             )
WILLIAM BURKE, and ROBERT           )
SIEGEL,                             )
                                    )      **ORDER ON PENDING MOTIONS**
            Plaintiffs,             )
                                    )
      v.                            )
                                    )
DAVID D. SMITH, CUNNER              )
LANE, LLC, and CUNNER LANE          )
II, LLC,                            )
                                    )
            Defendants.             )

This matter is before the Court following remand from the Law Court. Defendants

Cunner Lane II, LLC and David Smith have filed a "Motion to Bar Fissmer's Claims on

Remand Under the Doctrines of Claim Preclusion and Issue Preclusion." Plaintiffs have

opposed Defendants' Motion and have filed a Motion for Entry of Judgment on the

remaining claims of Plaintiff Leslie S. Fissmer, individually and as trustee of the Leslie S.

Fissmer Revocable Trust ("Ms. Fissmer"). For the following reasons, the Court denies

both motions.

I.    **Background**

On June 18, 2018, a jury-waived trial was held in the Superior Court (Cumberland

County, *Walker, J.*). Principally at issue at trial was the location of a private road called

Cunner Lane, title to the paved road known as Cunner Lane and the twenty-foot-wide

Cunner Lane corridor depicted on a 1929 subdivision plan, and title to a five-foot-wide

strip of land running parallel to and between the Cunner Lane corridor and the

REC'D CUMB CLERKS OFC
SEP 29 '22 PM1:25

boundaries of Plaintiffs' properties.[1] Plaintiffs alleged that they had adversely possessed portions of the Cunner Lane corridor and the five-foot-wide strip abutting each of their properties, which they had used as part of their front lawns.[2]

The Superior Court issued a written Judgment and Order dated October 11, 2018 ("the 2018 Judgment"). The court concluded, in pertinent part:

> On Count V [of Plaintiffs' Complaint against Defendants Cunner Lane, LLC and David D. Smith], judgment is entered for Plaintiffs. Plaintiffs have obtained fee simple title by adverse possession to the property abutting the western and northwestern edge of the paved road known as Cunner Lane.
> . . .
> As to Defendant Cunner Lane II, LLC's complaint, judgment is entered for Defendant in part and for Plaintiffs in part. . . . Cunner Lane II, LLC holds title in fee simple to the paved road known as Cunner Lane up to the western and northwestern edge of the pavement. To the extent the property deeded to Defendant Cunner Lane II, LLC extends to the west and northwest beyond the western and northwestern edge of the pavement, Cunner Lane II, LLC has no ownership rights in the property.
>
> As to Plaintiffs' complaint against Cunner Lane II, LLC, judgment is entered for Plaintiffs. To the extent the property deeded to Defendant Cunner Lane II, LLC extends to the west and northwest beyond the western and northwestern edge of the paved road known as Cunner Lane, Plaintiffs have obtained fee simple title to this property by adverse possession.

*Fissmer v. Smith*, No. RE-16-292, 2018 Me. Super. LEXIS 214, at *32-33 (Oct. 11, 2018).

Mr. Smith, Cunner Lane, LLC, and Cunner Lane II, LLC timely appealed. Plaintiffs cross-appealed from the court's determination declaring Cunner Lane II, LLC the owner of the paved road known as Cunner Lane up to the northwestern and western edge of the pavement.

On appeal, the Law Court summarized its conclusions as follows, in relevant part:

---

[1] As discussed in the 2018 Judgment, the paved road called Cunner Lane occupies a different location than the twenty-foot-wide Cunner Lane corridor depicted in the 1929 plan. The Court will hereinafter refer to the contemporary paved road as the "paved road" or the "paved road known as Cunner Lane," and refer to the twenty-foot-wide corridor depicted on the 1929 plan as the "Cunner Lane corridor."

[2] This case formerly involved private roads known as Brook Road and Sunrise Drive and a five-foot-wide strip abutting Sunrise Drive, but the parties' disputes regarding these roads and property abutting these roads have been resolved. For the sake of simplicity, the Court will focus on the Cunner Lane disputes.

- The court correctly concluded that Fissmer, the Burkes, and the Gramses had acquired title, by adverse possession, to the disputed property that they have used as their lawns, gardens, and driveways up to the paved edge of present-day Cunner Lane.

- Any adverse possession claim by Fissmer concerning the southernmost portion of the twenty-foot-wide corridor designated as Cunner Lane—the portion of that corridor to the south of her driveway—will require additional litigation.

  . . .

- Any "additional litigation" undertaken may require the trial court to address the issue of res judicata.

*Fissmer v. Smith*, 2019 ME 130, ¶ 50, 214 A.3d 1054.

The Law Court held:

The portion of the judgment declaring Fissmer owner of the entire fee under Sunrise Drive is vacated and remanded to the Superior Court for entry of a judgment declaring Cunner Lane II owner of Sunrise Drive, as depicted on the 1929 Plan, and of the five-foot-wide strip alongside Sunrise Drive. . . . The judgment is affirmed in all other respects. With regard to the adverse possession issue, however, the judgment is remanded for the purpose of legally establishing the parties' new boundary lines.

*Id.*

On remand, Mr. Smith and Cunner Lane II, LLC seek to bar Ms. Fissmer from reasserting an adverse possession claim to the property they label "the South Yard" and describe as "the section to the south of [Ms. Fissmer's] driveway." Plaintiffs seek entry of judgment declaring that Ms. Fissmer has acquired title in fee simple by adverse possession to the disputed property.

II.     Discussion

The Court must initially address an apparent disagreement among the parties about the boundaries of the disputed property for which the Law Court decided "additional litigation" is needed. To clarify, no portion of Ms. Fissmer's driveway remains in dispute because then-Justice Walker concluded, and the Law Court affirmed,

that she has acquired title to the property used as her driveway by adverse possession. *Fissmer*, 2019 ME 130, ¶ 50, 214 A.3d 1054; *Fissmer*, 2018 Me. Super. LEXIS 214, at *32-33.

The only area for which "additional litigation" is required to determine title is "the southernmost portion of the twenty-foot-wide corridor designated as Cunner Lane—the portion of that corridor to the south of her driveway . . . ." *Fissmer*, 2019 ME 130, ¶ 50, 214 A.3d 1054. This area, which the Court will hereinafter refer to as "the South Yard," encompasses a wood post, an apple tree, and an area of dense bushes or trees.[3] It is roughly bounded by the Cunner Lane corridor to the northeast and southwest, Ms. Fissmer's paved driveway to the northwest, and the northwestern edge of the five-foot strip abutting Sunrise Drive to the southeast.

### A. Defendants' Motion to Bar Fissmer's Claims on Remand

"The doctrine of res judicata is a court-made collection of rules designed to ensure that the same matter will not be litigated more than once." *Camps Newfound/Owatonna Corp. v. Town of Harrison*, 1998 ME 20, ¶ 11, 705 A.2d 1109 (citations and quotations omitted). The doctrine of res judicata "has two components: collateral estoppel, also known as issue preclusion, and claim preclusion." *Kurtz & Perry, P.A. v. Emerson*, 2010 ME 107, ¶ 16, 8 A.3d 677.

Collateral estoppel "prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and . . . the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Penkul v. Matarazzo*, 2009 ME 113, ¶ 7, 983 A.2d 375 (quotation marks omitted). "Claim preclusion bars relitigation if: (1) the same parties or their privies are involved in both actions; (2) a

---

[3] The Court uses the term "the South Yard," for convenience because Defendants have adopted the same term. The Court does not intend to suggest that Ms. Fissmer has demonstrated that she uses the property as a yard.

valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action." *Macomber v. Macquinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131. "A party asserting collateral estoppel has the burden of demonstrating that the specific issue was actually decided in the earlier proceeding." *Id.* ¶ 25 (citing 18 Charles Alan Wright et al., Federal Practice and Procedure § 4420 (2d ed. 2002)).

Despite the Law Court's holding that the 2018 Judgment did not address the South Yard, Mr. Smith and Cunner Lane II, LLC argue that Ms. Fissmer's claims to the South Yard were already ruled on in the 2018 Judgment and affirmed on appeal. Defendants argue that Justice Walker intentionally omitted discussion of areas that he concluded she did not adversely possess because Plaintiffs' Amended Complaint requested a judgment only as to "the extent" of her adverse possession. This argument is not borne out by the language of the Amended Complaint, which states:

> To the extent that the Plaintiffs' Properties (or the area on the face of the earth used by Plaintiffs as their respective properties) extends past the deeded boundary line of Defendants' Property (all such areas defined as "Adverse Possession Areas"), Plaintiffs seek a declaration that title to such Adverse Possession Areas now vests in each of them, respectively, through adverse possession.

(Pls.' Am. Compl. ¶ 46.) Plaintiffs did not request a declaratory judgment as to "the extent" of their adverse possession. Defendants' argument mischaracterizes the 2018 Judgment and the Amended Complaint.

Moreover, neither claim preclusion nor issue preclusion apply to continuing actions. Although Ms. Fissmer can neither raise new claims nor relitigate issues decided and affirmed on appeal, her claims regarding the South Yard were previously raised in this action and remain unresolved. Accordingly, Ms. Fissmer's claims are not barred.

### B. Plaintiffs' Motion for Entry of Judgment

Plaintiffs move for entry of a judgment declaring that Ms. Fissmer has acquired title in fee simple by adverse possession to the South Yard. "'A party claiming title by adverse possession has the burden of proving, by a preponderance of the evidence, that possession and use of the property was (1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive; and (9) for a duration exceeding the twenty-year limitations period.'" *Fissmer*, 2019 ME 130, ¶ 41, 214 A.3d 1054 (quoting *Weeks v. Krysa*, 2008 ME 120, ¶ 12, 955 A.2d 234). Plaintiffs argue that the findings of fact made in the 2018 Judgment provide a sufficient basis for this conclusion.

In fact, the 2018 Judgment makes few findings regarding the South Yard. The judgment notes the existence of a post displaying Ms. Fissmer's address and an apple tree at "the southeasternmost point of the disputed area of Ms. Fissmer's lawn." *Fissmer*, 2018 Me. Super. LEXIS 214, at *14. The 2018 Judgment states: "[Ms. Fissmer] occasionally has the [apple] tree branches trimmed but admitted that she otherwise does little maintain it. Nonetheless she testified that she maintains the tree as though it were her own." *Id.* at *14-15. There are also several references to Ms. Fissmer's maintenance of bushes at the edge of her lawn, but context suggests that these are references to the landscaped, ornamental shrubs along the paved Cunner Lane rather than the dense trees or bushes that make up most of the South Yard. *Id.* at *14.

Contrary to Ms. Fissmer's contentions, the findings of the 2018 Judgment are not sufficient to support a conclusion that she has acquired title to the South Yard by adverse possession. Accordingly, the Court must deny Plaintiffs' Motion for Entry of Judgment.

### III.    Conclusion

For the foregoing reasons, the Court denies Plaintiffs' Motion for Entry of Judgment and Defendants' Motion to Bar Fissmer's Claims on Remand.

The entry is:

1. Defendants Cunner Lane II, LLC and David Smith's Motion to Bar Fissmer's Claims on Remand Under the Doctrines of Claim Preclusion and Issue Preclusion is DENIED; and

2. Plaintiffs' Motion for Entry of Judgment is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _____9/29/2022_____

_____
MaryGay Kennedy, Justice
Maine Superior Court

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-16-292

LESLIE FISSMER, Individually and as )
Trustee of the LESLIE S. FISSMER )
REVOCABLE TRUST, PATRICIA and )
REED GRAMSE, KAREN and )
WILLIAM BURKE, and ROBERT )
SIEGEL, )
)
        Plaintiffs )
)
      v. )
)
DAVID D. SMITH, CUNNER LANE, )
LLC, and CUNNER LANE II, LLC, )
)
        Defendants. )

JUDGMENT AND ORDER

STATE OF MAINE
Cumberland ss Clerk's Office

OCT 15 2019

RECEIVED

8:02
AM

Before the Court is Plaintiffs' complaint against Defendants David Smith and Cunner Lane, LLC for declaratory judgments as to the location of a private road known as Cunner Lane; that Plaintiffs' properties are benefitted by a prescriptive easement over Cunner Lane; that Defendants' easements were terminated through abandonment or adverse possession; and that Plaintiffs have obtained title to certain properties by adverse possession (Counts I through V). Plaintiffs also allege common law trespass (Count VI). Mr. Smith and Cunner Lane, LLC filed a counterclaim for declaratory judgment as to the location of Cunner Lane (Count I), nuisance (Count II), and declaratory judgment as to Counterclaim Plaintiffs' right to clear Cunner Lane of obstructions (Count III).[1] This complaint and counterclaim were docketed as number RE-16-292.

Defendant Cunner Lane II, LLC filed a complaint, as amended, against Plaintiffs for declaratory judgment as to Cunner Lane II, LLC's ownership rights to Cunner Lane and other private roads. This complaint was docketed as number RE-17-243. Plaintiffs thereafter filed a

---

[1] Counts IV and V of the counterclaim were dismissed by stipulation.

1 of 21

Plaintiffs–Kelly McDonald, Esq./
John Shumadine, Esq.
Defendants–Alan Atkins, Esq./
Kurt Olafsen, Esq.

complaint against Cunner Lane II, LLC for declaratory judgment of title by adverse possession, docketed as number RE-17-255.

The three actions were consolidated and litigated under docket number RE-16-292. A bench trial was held on June 18, 2018. The parties thereafter filed written closing arguments.

## I. FACTS

The Court makes the following fact findings based on the record of this case, including evidence received at the bench trial. The parties' properties are situated on or near Hannaford Cove in Cape Elizabeth, Maine. Principally at issue in this case is title to a private road known as Cunner Lane and an adjoining five-foot-wide strip of land ("the five-foot strip") running alongside the road. The road is located between Defendants' lot (to the east and southeast of the road) and Plaintiffs' lots (to the west and northwest of the road). Defendant Cunner Lane II, LLC claims to hold fee simple title to the entire disputed area pursuant to a 2017 deed from the subdivision developer. Plaintiffs contend that a substantial portion of the disputed area has, for more than 60 years, formed the outermost edge of each of their front lawns.

Each of Plaintiffs' properties was originally deeded from the Harry E. Baker Co. ("HEB") in accordance with a 1929 plan of land ("1929 Plan") recorded in the Cumberland County Registry of Deeds at Book 19, Page 5. (*See* Defs.' Ex. 13.) The 1929 Plan contains a twenty-foot corridor, designated "Cunner Lane," on the easterly side of Plaintiffs Fissmer and Burkes' lots and curving around the southeasterly side of Plaintiffs Gramses' lot. (*Id.*)

Plaintiff Leslie Fissmer lives at 20 Cunner Lane, the southernmost of Plaintiffs' lots, which is designated Lot 14 on the 1929 Plan. Her source deed, dated July 18, 1929, granted title to her lot from HEB to Carroll S. Chaplin. (Defs.' Ex. 16.) The deed also grants several rights-of-way, including rights-of-way "over the right of way as now travelled along the easterly side of said lot

above described and over said proposed roads on the easterly and southerly side of said lot." (*Id.*) The deed refers to the "Plan of Land ... made for said Harry E. Baker Co. ... dated July 1929, to be recorded in said Registry of Deeds, on which Plan the above described lot is designated as lot No. 14." (*Id.*) On October 28, 1942, Chaplin conveyed back to HEB a "strip of land five feet in width measured at right angles to the westerly line of Cunner Lane as delineated" on the 1929 Plan, reserving a right-of-way over the five-foot strip. (Defs.' Ex. 18.) The deed states: "The purpose of this conveyance being that said strip of land may be included in and made a part of said Cunner Lane and of said proposed road, thereby increasing the width thereof to twenty-five feet." (*Id.*) On November 7, 1985, the lot was deeded to Robert J. Fissmer and Leslie S. Fissmer. (Defs.' Ex. 15.) The 1985 deed grants the lot conveyed by the 1929 deed, together with the rights-of-way, excepting and reserving the five-foot strip. (*Id.*) On September 8, 2008, Ms. Fissmer deeded the lot to herself as Trustee of the Leslie S. Fissmer Revocable Trust. (Defs.' Ex. 14.) The deed again conveys the lot and rights-of-way conveyed in the 1929 deed, excepting the five-foot strip. (*Id.*)

Plaintiffs Karen and William Burke live at 7 Brook Road. Their lot is located between the Fissmer lot and the Gramse lot and is designated Lot 1 on the 1929 Plan. The Burkes' source deed, dated April 4, 1931, conveys their lot from HEB to Thomas Smiley, as well as several rights-of-way including rights-of-way "to the shore at said Hannaford Cove, over a road to be laid out by said [HEB] and ... over said road as now travelled along the easterly side of said lot above described." (Defs.' Ex. 21.) On July 15, 1932, Smiley deeded back to HEB a "strip of land five feet in width measured at right angles to the westerly line of Cunner Lane as delineated" on the 1929 Plan, reserving a right-of-way over the five-foot strip. (Defs.' Ex. 23.) The deed states: "the purpose of this conveyance being that said strip of land may be included in and made a part of said Cunner Lane." (*Id.*) On August 26, 2005, the lot and all rights-of-way were deeded from Jerry W.

and Wendy S. Peterson to William A. Burke, excepting the five-foot strip. (Defs.' Ex. 20.) On April 11, 2009, William A. Burke conveyed the property to Karen A. B. Burke, again along with all rights-of-way and excepting the five-foot strip. (Defs.' Ex. 19.)

Plaintiffs Patricia and Reed Gramse live at 12 Cunner Lane, on the lot designated the Lily Pond Lot on the 1929 Plan. The southeasterly side of their lot forms a curve abutting the disputed area. Their source deed, dated June 8, 1933, conveys the Lily Pond Lot from HEB to Marcia S. Quimby. (Defs.' Ex. 26.) This deed excepts and reserves a five-foot strip abutting Cunner Lane. (*Id.*) The deed grants a number of rights-of-way, including over Cunner Lane and the five-foot strip. (*Id.*) On August 5, 1988, Paul A. and Lila M. Wray conveyed the lot, including the rights-of-way and excepting the five-foot strip, to R. Reed and Patricia M. Gramse. (Defs.' Ex. 25.)

Defendants' lot is situated on the easterly side of Cunner Lane. Defendants' source deed, dated November 10, 1920, grants the property from Albert F. Hannaford to The Venerable Cunner Association and Propeller Club. (Defs.' Ex. 28.) The deed grants a right-of-way "over the private road as now located … adjoining said land hereby conveyed on the westerly and northwesterly lines thereof." (*Id.*) On January 23, 1998, the lot was conveyed from John P.M. Higgins and Ellen M. Higgins, Trustees of the Robert A. G. Monks Trust, to David D. Smith, also granting the right-of-way "over the private road as now located." (Defs.' Ex. 29.) On February 18, 2010, David D. Smith conveyed a portion of the lot, along with the right-of-way "over the private road as now located," to Cunner Lane, LLC. (Defs.' Ex. 30.)

In 1998, in anticipation of building a wall around his property, Mr. Smith commissioned a survey of the area, including the boundaries of his property, Plaintiffs' properties, and Cunner Lane. (*See* Trial Tr. 183:8-18.) The survey indicated that Cunner Lane is actually located several feet west and northwest of the now-paved road, placing part of the paved road on Mr. Smith's lot

and part of the actual Cunner Lane on Plaintiffs' front lawns.[2] Mr. Smith wrote a letter informing Douglas Snow, a predecessor-in-interest to the Burkes, of the mistaken boundary issue. (Defs.' Ex. 37.) While the letter requests Mr. Snow to contact his neighbors about the issue, Mr. Smith did not follow up to find out if the letter had been distributed and took no other action to remedy the mistaken boundary issue prior to commissioning another survey in 2016. (Trial Tr. 195:15-196:8.)

At trial, John Swan, the licensed land surveyor who conducted the 2016 existing conditions survey, testified as to the locations of the boundaries of each party's property and the location of Cunner Lane according to the record deeds. (*See* Defs.' Exs. 1, 2.) Plaintiffs have not contested Mr. Swan's testimony or the validity of the 2016 existing conditions survey.

On May 25, 2017, HEB, by and through its sole Director, Mary Baker Drake, conveyed to Cunner Lane II, LLC title to all of the roads shown on the 1929 Plan, including Cunner Lane, as well as the five-foot strip. (Defs.' Ex. 31.)

## II.    ANALYSIS

The disputed area in this case encompasses the paved road commonly known as Cunner Lane and the portion of Plaintiffs' front lawns abutting the pavement which, according to the existing conditions survey, is part of the actual Cunner Lane and the five-foot strip. The parties on both sides have presented argument regarding their ownership of the disputed area in accordance with the language of deeds dating back to the 1920's, as well as the Paper Streets Act, 33 M.R.S.A. § 469-A (2011) ("PSA"). In the alternative, Plaintiffs argue that they have obtained title by adverse

---

[2] There is no dispute that Mr. Smith paid to have the road paved. Although the record does not indicate when the road was paved, Mr. Smith's letter to Mr. Snow refers to the "existing Cunner dirt road" (Defs.' Ex. 37), suggesting Mr. Smith did not have the road paved until after the 1998 survey was conducted.

possession to their front lawns to the edge of the pavement, and to the extent Defendants claim a right-of-way over this property, such interest has been extinguished by adverse possession.

A. Paper Streets Act

As a threshold matter, Defendants question whether Plaintiffs' claims pursuant to the PSA are properly before the Court because they were not pleaded. Because Plaintiffs raised the PSA issue in their trial brief and again at trial, and rather than object, Defendants acknowledged they were prepared to respond to the PSA arguments (Trial Tr. 12:5-19), this issue was tried by consent. *See* M.R. Civ. P. 15(b). Nonetheless, for the most part, the Court finds the PSA does not aid Plaintiffs' case.

Pursuant to the PSA,

Any conveyance made before September 29, 1987 that conveyed land abutting upon a proposed, unaccepted way laid out on a subdivision plan recorded in the registry of deeds is deemed to have conveyed all of the grantor's interest in the portion of the way that abuts the land conveyed, unless the grantor expressly reserved the grantor's title to the way by a specific reference to this reservation in the conveyance of the land.

33 M.R.S.A. § 469-A(1). Generally, landowners meeting the conditions outlined in subsection 469-A(1) are "deemed to own to the center line of the way." *Id.* § 469-A(6). However, such landowner owns the entire width of proposed, unaccepted way if:

A. The proposed, unaccepted way or portion of the proposed, unaccepted way is part of the subdivision and is laid out on the subdivision plan recorded in the registry of deeds;

B. The person's predecessors in title had not reserved title in the proposed, unaccepted way or portion of the proposed, unaccepted way under subsection 1 or 2; and

C. The proposed, unaccepted way or portion of the proposed, unaccepted way is bounded on the opposite side by land that is not included in the subdivision.

*Id.* § 469-A(6-A). The Legislature has mandated that the PSA "be liberally construed to affect the legislative purpose of clarifying the title to land underlying proposed, unaccepted ways by eliminating the possibility of ancient claims." *Id.* § 469-A(8).

Although the PSA may have operated in favor of Ms. Fissmer and the Burkes based on their source deeds, the conveyance back to HEB of the five-foot strip thwarts their arguments for ownership of Cunner Lane. Ms. Fissmer's and the Burkes' predecessors deeded the five-foot strip back to HEB, reserving only a right-of-way. Although these deeds expressly state the purpose of these conveyances was to widen Cunner Lane, the five-foot strips themselves were not included on the recorded 1929 Plan as part of the proposed way. The five-foot strip was, instead, "land abutting upon a proposed, unaccepted way laid out on a subdivision plan recorded in the registry of deeds" because it abutted the proposed Cunner Lane. 33 M.R.S.A. § 469-A(1). As such, the Court agrees with Defendants that not only did HEB obtain title to the five-foot strip by these conveyances, but pursuant to subsection 469-A(6-A), HEB also obtained title to Cunner Lane.

Plaintiffs ask the Court to apply a liberal interpretation of the statute to find that the lots conveyed to their predecessors were properties that abut a proposed, unaccepted way because it was intended that the five-foot strip become part of Cunner Lane. However, no such interpretation is necessary or warranted, as the plain language of the statute can be applied to the language of the deeds at issue to unquestionably conclude that the conveyance of the five-foot strip from Plaintiffs' predecessors to HEB fits squarely within the PSA to deem the entirety of Cunner Lane to belong to HEB.[3]

In the conveyance from HEB to the Gramses' predecessor, HEB expressly reserved the five-foot strip. Therefore, the lot conveyed to the Gramses' predecessor never abutted the

---

[3] Of course, in 2017, HEB conveyed Cunner Lane to Defendant Cunner Lane II, LLC.

proposed, unaccepted way. The PSA does not apply to grant the Gramses title either to the five-foot strip (because it was expressly reserved in the Gramses' source deed) or to any portion of Cunner Lane (because it does not abut the Gramses' property).

However, as to Sunrise Drive and Brook Road, Plaintiffs argue – and Defendants do little to dispute – that pursuant to the PSA, Plaintiffs Siegel, Burke, and Gramse own the fee to the centerline of Brook Road where it abuts their properties, and Plaintiff Fissmer owns the entire fee under Sunrise Drive. The Court agrees and therefore finds that the 2017 deed from HEB to Cunner Lane II, LLC did not convey these roads because they were owned by Plaintiffs, not by HEB. Defendants have no interest in Brook Road and Sunrise Drive.

B. Adverse Possession

At most, then, Plaintiffs own title to the disputed property along Cunner Lane by adverse possession.[4] A party claiming title to property by adverse possession must prove by a preponderance of the evidence that its possession and use of the property were: (1) actual, (2) open, (3) visible, (4) notorious, (5) hostile, (6) under a claim of right, (7) continuous, (8) exclusive, and (9) of a duration exceeding the twenty-year limitations period. *Striefel v. Charles-Keyt-Leaman P'ship*, 1999 ME 111, ¶ 6, 733 A.2d 984. The claimant must prove each element by a preponderance of the evidence. *Harvey v. Furrow*, 2014 ME 149, ¶ 11, 107 A.3d 604. The Court will examine each element in turn.

*1. Actual*

To prove this element, Plaintiffs must show the disputed property is in their "immediate occupancy and physical control" by demonstrating "an actual use and enjoyment of the property that is in kind and degree the same as the use and enjoyment to be expected of the average owner

---

[4] At minimum, the parties have stipulated that Plaintiffs have a prescriptive easement over the paved road.

of such property." *Harvey*, 2014 ME 149, ¶ 12, 107 A.3d 604 (internal quotations omitted). Defendants insist that Plaintiffs' uses of the disputed property are insufficient to establish actual possession, arguing that Plaintiffs have done little more than seasonally mow the grass. *See Weinstein v. Hurlbert*, 2012 ME 84, ¶ 12, 45 A.3d 743 (seasonal mowing and other seasonal or isolated events were insufficient to prove adverse possession). However, a use such as mowing grass is not to be disregarded in establishing adverse possession and may be considered in the aggregate with other uses made of the property "in the context of a claimant's overall use of the property." *Harvey*, 2014 ME 149, ¶ 19, 107 A.3d 604.

Plaintiffs' Exhibit 1 shows an aerial view of Mr. Smith's lot, the paved Cunner Lane, and the lots belonging to (from left to right) Ms. Fissmer, the Burkes, and the Gramses. The bushes marking the border of each Plaintiffs' claimed property at the edge of the pavement are visible in this photograph.

**The Fissmer Lot.** Ms. Fissmer has been a part of this community since she was a child, visiting Hannaford Cove every summer since the 1940s. The Fissmers purchased their home in 1985. It was used only as a summer home until 1997, when they moved in full-time. Since 2006, Ms. Fissmer has spent winters in Florida.

The eastern boundary of what Ms. Fissmer considers to be her front lawn is lined by bushes and marked with a wooden post[5] and a mailbox. (Trial Tr. 26:18-27:5; Pls.' Exs. 3, 4.) To the left of the mailbox is an underground garbage receptacle, the green lid of which is at ground level.[6] (Trial Tr. 31:14-18, 79:9-22.) She has mowed, fertilized, raked, and dethatched the grass. (Trial Tr. 33:11-19.) Since about 2008 she has maintained a mulched bed around the bushes. (Trial Tr.

---

[5] For many years, there were two posts marking each side of the driveway. One of the posts disappeared last summer.
[6] Although intuitively, it seems the lid of this receptacle would be visible at ground level, Mr. Smith testified that he has never seen it. (Trial Tr. 172:23-173:4.)

34:8-25.) She trims the bushes multiple times a year. (Trial Tr. 35:23-36:12.) She has extensively groomed around the bushes, maintained a yucca plant left by previous owners, and planted and maintained a flower bed. (Trial Tr. 34:1-7.) On the southeasternmost point of the disputed area of Ms. Fissmer's lawn, there is a post displaying her address and an apple tree. (Pl.'s Ex. 7.) She occasionally has the tree branches trimmed but admitted that she otherwise does little to maintain it. (Trial Tr. 36:13-20.) Nonetheless, she testified that she maintains the tree as though it were her own. (Trial Tr. 36:23-24.) Ms. Fissmer paved her driveway in 1997 and testified that it was always maintained as a grass or dirt driveway before then. (Trial Tr. 39:14-40:11.) For over a decade, she would put a chain across the front of her driveway when she left Maine in the fall. (Trial Tr. 38:3-24.) Her grandchildren have played on the grass and the driveway during the summers since 2005, as did her children in the summertime. (Trial Tr. 40:12-41:5, 76:16-77:11.)

**The Burke Lot.** Mr. Burke testified that since purchasing his home in 2005, he has used a lawn company to maintain his grass to the edge of the pavement, and his mailboxes have been located at the front corner of the lawn since before he moved in. (Trial Tr. 88:25-89:14, 90:16-22; Pls.' Ex. 14, 21) He has bushes along the edge of the paved way that are trimmed a couple of times a year, and he considers them to informally mark his property line. (Trial Tr. 89:21-90:6, 99:5-13; Pls.' Ex. 8.) In 2008, he installed an irrigation system about a foot from the pavement, with sprinklers that are visible while watering. (Trial Tr. 91:1-12) That same year, he also installed an invisible dog fence. For a few months while training the dog, the fence was marked above ground with a blue sign and flags. (Trial Tr. 91:13-20.) Some years, he has marked the edge of the yard with snow stakes, but has since stopped because his bushes adequately mark the area. (Trial Tr. 93:5-18.) He, his children, and his dog have all played in the disputed area. (Trial Tr. 92:24-93:4.)

Ms. Fissmer testified about how the disputed area of the Burkes' yard was used before the Burkes moved in. She testified that before 2005, the bushes were in the disputed area, as well as a lilac tree and a wooden picket fence, which ran the full length of the front of the property, a couple of feet from the pavement. (Trial Tr. 44:12-25; Pls.' Exs. 21, 22.) She testified the fence was there "[a]ll the time" the Petersons (the Burkes' predecessor) lived there, from around 1998, and that it was removed after the Burkes moved in. (Trial Tr. 45:13-23.) Mr. Burke testified he removed the fence after he installed the dog fence and decided the bushes adequately provided a buffer at the edge of his yard. (Trial Tr. 88:5-13, 90:4-11.) Ms. Fissmer further testified that while owned by the Snows (the Petersons' predecessor), there was a driveway that ran from Cunner Lane to the front entrance of the house. (Trial Tr. 46:7-10; *see* Pls.' Ex. 14) Before the Burkes moved in, the disputed area in front of their home was maintained as a yard and used for play by dogs and children. (Trial Tr. 47:3-14.)

**The Gramse Lot.** Dr. Gramse testified that he believes the bushes abutting the pavement in front of his home have been there for at least 50 years and that they have always formed a continuous hedge. (Trial Tr. 115:4-18; *see* Pls.' Exs. 6, 12.) Ms. Fissmer confirmed that the bushes in front of the Gramses' home have been there since around 1950. (Trial Tr. 48:18-20.) Dr. Gramse mows, dethatches, waters, fertilizes, and sometimes rakes his lawn, including the disputed area. (Trial Tr. 117:3-17.) He testified that he works on his lawn at least weekly. (Trial Tr. 117:18-19.) He trims the hedges a few times a year. (Trial Tr. 118:5-8.) In the winter, he puts up snow stakes to mark where his yard abuts Cunner Lane. (Trial Tr. 118:16-21, 121:20-122:4.) At the first curve of his lawn, at the edge of the pavement, he placed four large rocks to mark the corner, and they have been there at least twenty years. (Trial Tr. 118:22-119:7; Defs.' Ex. 3.) Like Mr. Burke, Dr. Gramse installed an invisible dog fence in the mid-1990s and marked its location with flags for a

month or two. (Trial Tr. 119:18-120:12, 135:7-136:1.) His children and dog have played in the disputed area, and his daughter was married on the front lawn. (Trial Tr. 121:2-19.) Dr. Gramse acknowledged on cross-examination that as to much of the disputed area in front of his house, he has only maintained the grass. (Trial Tr. 140:4-5.)

Mr. Siegel testified that he purchased his home in November 1972 and has lived there full-time ever since. (Trial Tr. 103:23-104:1) Almost daily since he moved into his home, he has walked along Cunner Lane and is familiar with the disputed property there. (Trial Tr. 104:12-105:4.) He testified that he agrees with Ms. Fissmer's testimony as to how the disputed areas have been used and that the uses of the disputed areas have been the same as an average owner of a front yard would use the property. (Trial Tr. 105:13-23.) Dr. Gramse also testified that, based on his personal knowledge of the neighborhood since 1988, he agrees with Ms. Fissmer's and Mr. Siegel's testimony as to how the disputed properties along Cunner Lane have been used. (p 123:21-124:21.)

The Court finds Plaintiffs and their predecessors have actually occupied and used the disputed property on their side of the road as an average owner of a front lawn would use such property. *See Rose v. DiBerto*, 2015 Me. Super. LEXIS 167, No. CV-11-263, at *27 (Sept. 9, 2015) (plaintiffs actually possessed property when they occupied, used, and maintained disputed lawn area in same manner they occupied, used, and maintained the rest of their yard).

### 2. *Open, visible, and notorious*

"Open means without attempted concealment. Visible means capable of being seen by persons who may view the premises. Notorious means known to some who might reasonably be expected to communicate their knowledge to an owner maintaining a reasonable degree of supervision over his property." *Harvey*, 2014 ME 149, ¶ 13, 107 A.3d 604 (quotations omitted).

Ms. Fissmer, Mr. Burke, and Dr. Gramse each testified they have never made any attempt to conceal their uses of the disputed area and that their uses would have always been visible to anybody passing by. (Trial Tr. 41:13-20, 93:23-94:3, 122:9-13.) Mr. Seigel confirmed that Plaintiffs' and their predecessors' uses of the property have been visible. (Trial Tr. 105:20-25.) There may be room for debate as to whether some of Plaintiffs' uses qualify to establish these elements; for example, the invisible dog fences are by definition not visible, and Mr. Smith testified that he has never actually seen Ms. Fissmer's garbage receptacle. Nonetheless, from each Plaintiff's testimony and from the photographs admitted into evidence – many of which are decades old – it can easily be concluded that, as a matter of day-to-day living, the disputed areas up to the edge of the road have been openly and visibly maintained as the front lawns of Plaintiffs and their predecessors.

Not only were the Plaintiffs' uses of the property sufficient to put the true owner "on notice that the land in question is actually, visibly, and exclusively held by a claimant in antagonistic purpose," *Weeks v. Krysa*, 2008 ME 120, ¶ 13, but there is evidence in the record that Mr. Smith himself had actual notice.[7] Specifically, Mr. Smith's letter to Mr. Snow clearly demonstrates that as early as 1998, Mr. Smith was aware Plaintiffs were using the disputed property as their own.

Plaintiffs have satisfied these elements.

3. *Hostile*

Perhaps the greatest challenge for Plaintiffs in establishing adverse possession in this case is the hostility element. This element requires "that the possessor does not have the true owner's permission to be on the land." *Striefel*, 1999 ME 111, ¶ 7, 733 A.2d 984. As Defendants argue,

---

[7] Although Mr. Smith was not the true owner of the property until 2017 (if at all), the Court finds it nonetheless significant that Mr. Smith has been aware for twenty years that Plaintiffs have been treating this property as their front lawns.

Plaintiffs did have permission to be on the land because they have always had deeded rights-of-way over Cunner Lane and the five-foot strip.[8] *See Mill Pond Condo. Ass'n v. Manalio*, 2016 ME 135, ¶ 9, 910 A.2d 392 (owners of easement did not establish adverse possession because use of property was within terms of deeded right-of-way). "Generally, the holder of an easement may only exercise the rights granted in a reasonable manner, and cannot do more." *Id.* ¶ 6. As in this case, "where the grant of an easement is clearly for the purpose of allowing free and convenient passage over a lot from every feasible point necessary for enjoyment of the easement, restriction of access to a particular point is impermissible." *Id.* The Court concludes Plaintiffs' uses exceeded the rights granted by the rights-of-way and therefore established hostility.[9]

The disputed area on each lot is at least partially obstructed by bushes, mailboxes, and stones. Although the Fissmers paved their driveway, which would be consistent with use of the area as a right-of-way, for a period of time they used to chain off their driveway area so that no one else could pass over it. The area Ms. Fissmer considers the be the eastern border of her lawn is lined with bushes, making passage over the property virtually impossible. For nearly a decade, the Burkes and their predecessors had a picket fence that ran the entire length of the property abutting the road, and after removing the fence, the Burkes installed their irrigation system, which would obstruct passage when in use. The Gramses' thick hedges, stones, and snow stakes are clearly meant to signal drivers to stay off of the grass. Further distinguishing the disputed property from the road, children and dogs have played in the disputed area; indeed, dogs have been trained by invisible fences to stay out of the road—to go to the edge of the pavement and no further. (*See*

---

[8] Mr. Smith further contends that he "essentially granted them permission" by sending the letter to Mr. Snow in 1998 and putting his neighbors on notice that there was a problem. However, permission was not Mr. Smith's or his predecessors' to give, as the disputed area was owned by HEB until 2017.

[9] Furthermore, to the extent Mr. Smith's 1998 letter to Mr. Snow put Plaintiffs on notice that they had misapprehended the boundary, Plaintiffs' continued use of the property serves to further bolster Plaintiffs' claim of hostility. *Harvey*, 2014 ME 149, ¶ 14, 107 A.3d 604.

Trial Tr. 92:4-6.) Even in the relatively unobstructed areas, the grass has always been maintained as well-manicured lawn space, not as property that is meant for passage.

The Court concludes Plaintiffs and their predecessors have not used the disputed property merely as a right-of-way. Rather they have used it as their front lawns to which they have believed themselves to possess fee ownership. In pursuit of such uses, they have continuously restricted access to the disputed property and thereby impeded shared rights to pass over the property. Plaintiffs have used the disputed property in a hostile manner, even in light of their deeded rights-of-way.

### 4. *Under claim of right*

"Under a claim of right means that the claimant is in possession as owner, with intent to claim the land as its own, and not in recognition of or subordination to the record title owner." *Harvey*, 2014 ME 149, ¶ 15, 107 A.3d 604 (quotations omitted). Ms. Fissmer testified that, as far as she knows, her front lawn extends to the edge of the paved road, it has always been her intent to claim it as her own, and she did not believe anyone else had the right to use the property. (Trial Tr. 24:21-24, 42:19-43:5) Mr. Burke likewise testified that he believes his property to extend to the pavement of Cunner Lane, he has intended to use the land as though it were his own, and he did not believe his use of the area was subject to others' rights. (Trial Tr. 86:7-13, 94:13-18.) Based on the Burkes' predecessors' uses of the property, the Court will infer that they, too, acted under a claim of right to the disputed area. Dr. Gramse also testified that he believes his lawn extends to the pavement on both the southerly side and ocean-facing easterly side, following the curve of Cunner Lane; he has intended to use it as his own; and he did not believe other people had rights to use the disputed areas. (Trial Tr. 113:5-23, 123:7-14.) Plaintiffs have satisfied this element.

### 5. *Continuous*

"Continuous means occurring without interruption, and, like actual possession and use, continuous possession and use requires only the kind and degree of occupancy (i.e., use and enjoyment) that an average owner would make of the property." *Harvey*, 2014 ME 149, ¶ 16, 107 A.3d 604 (internal quotations and alterations omitted).

Ms. Fissmer testified that from 1985 to 1997, she only used her home as a summer home, three months a year. From 1997 to around 2006, she lived there full-time. Since 2006, she has been spending the winters in Florida. These uses are consistent with how one would use this property. *See Manougian v. Ejdys*, No. RE-01-56, 2003 Me. Super. LEXIS 9, at *7-8 (Jan. 6, 2003) (finding continuous use of a seasonal residence). Summer homes are common in Maine, and it is not atypical for residents of Maine to spend winters elsewhere.[10] Even while away, Ms. Fissmer's static uses of the disputed area – her vegetation, mailbox, trash receptacle, and driveway which was sometimes chained off – remained in place.

The Burkes have been living in their house full-time since 2006. (Trial Tr. 86:5-6.) Prior to that, according to Ms. Fissmer's testimony, the Petersons lived there and around 1998 erected the picket fence, which remained in place until the Burkes removed it. (Trial Tr. 44:19-45:23.)

Dr. Gramse has lived in his home full-time since 1988 and has worked on his lawn at least weekly since he purchased the property. (Trial Tr. 113:1-4, 117:18-19.) Ms. Fissmer testified that the Gramses' hedges have been in the same location since about 1950. (Trial Tr. 48:16-20.) The Court concludes the disputed area has been in the continuous possession of Plaintiffs and their predecessors for many decades.

*6. Exclusive*

---

[10] Even Mr. Smith testified that he only uses his Cape Elizabeth home during the summers. (Trial Tr. 190:8-24.)

"Exclusive possession and use means that the possessor is not sharing the disputed property with the true owner or public at large." *Harvey*, 2014 ME 149, ¶ 16, 107 A.3d 604 (quotations omitted). Ms. Fissmer testified that apart from herself, her family, guests, and hired workmen, she has not shared the disputed property with others. (Trial Tr. 43:6-18.) Mr. Burke similarly testified that he has not shared the property with anyone other than family and guests, and that he might ask someone to leave if he did not want them on the property. (Trial Tr. 94:19-95:5.) Dr. Gramse also testified that nobody outside of his family and guests have used the disputed area in front of his property. (Trial Tr. 123:15-20.) Dr. Gramse testified that on rare occasion, people have stored boats on his grass during storms without his objection, but that he believed he had the right to prevent people from storing boats there if he chose. (Trial Tr. 133:10-17, 141:22-25.) Mr. Seigel confirmed that he has not seen anyone other than the respective lot owners' families and guests using the disputed property. (Trial Tr. 106:3-12.) Plaintiffs have satisfied this element.

### 7. *Duration exceeding twenty years*

The final element requires the claimant to "prove that its possession and use satisfied each of the aforementioned elements simultaneously for a period of at least twenty years." *Harvey*, 2014 ME 149, ¶ 17, 107 A.3d 604 (quotations omitted). Ms. Fissmer and her husband purchased their home in 1985. Her husband installed two wooden posts at the edge of her property around 1986, and until they moved into the home full-time in 1997, they used to hang a chain between the posts to block the driveway when they left every fall. (Trial Tr. 29:8-14, 38:3-24.) The lawn of what is now her home has been maintained since she used to walk Cunner Lane as a child over 60 years ago. The mailbox and garbage receptacle have "always" been there. (Trial Tr. 37:12-23.)

The Burkes have been living in their house full-time since 2006. (Trial Tr. 86:5-6.) The picket fence was erected around 1998, and the Burkes' predecessors maintained the disputed area

as a yard, and their dogs and children played there. (Trial Tr. 44:19-45:23; 47:3-11.) It was Mr. Snow, a predecessor of the Burkes, who in 1998 was approached by Mr. Smith about their problematic use of the property. (Defs.' Ex. 37.) The Gramses have lived in their home full-time since 1988, and Dr. Gramse has worked on his lawn at least weekly since purchasing the property. (Trial Tr. 113:1-4, 117:18-19.) The Gramses' hedges have been in the same location for many decades. (Trial Tr. 48:16-20.)

Testimony from Mr. Seigel further confirms that the disputed areas have been used as front lawns for well beyond the twenty-year period. (Trial Tr. 105:5-106:12.) The Court concludes Plaintiffs have established the disputed areas have been used in such as manner as to establish each of the elements of adverse possession for at least twenty years.

In sum, Plaintiffs have established by a preponderance of the evidence that for well over twenty years, the use of the disputed property by Plaintiffs and their predecessors has been "comprehensive and complete." *See Harvey*, 2014 ME 149, ¶ 20, 107 A.3d 604. Indeed, there is ample testimony that the community viewed the property on Plaintiffs' side of the road as the front lawns of the respective lot owners, and before Mr. Smith first commissioned a survey twenty years ago, it is apparent that no one ever questioned whether the entirety of the land used by Plaintiffs and their predecessors as their fronts lawns was actually owned by the respective lot owners. The disputed portions of these properties were not regularly traversed as a shared right-of-way would be; rather, they were continuously maintained as front lawns belonging exclusively to Plaintiffs and their predecessors. If ever exclusivity became compromised, barriers were put into place: a chain, a fence, snow stakes, large stones. Even if Plaintiffs or their predecessors had notice that the disputed land did not belong to them – either by the language of the deeds or by Mr. Smith's notice letter – Plaintiffs never acted in recognition of or submission to anyone else's rights to use

the disputed property. Plaintiffs have each adequately supported the elements necessary to establish title by adverse possession to the disputed property up to the western and northwestern edge of the pavement.

## C. Defendants' Right-of-way

This case is further complicated by the fact that most of the parties claim to possess rights-of-way over at least some portion of the disputed property.[11] In 1998, Mr. Smith (and later, Cunner Lane, LLC) was deeded a right-of-way "over the private road as now located," mirroring the language from Defendants' 1920 source deed. (Defs.' Exs. 28, 29, 30.) Defendants' source deed, which predated the 1929 Plan by nine years, makes no reference to Cunner Lane. Nonetheless, Defendants argue Mr. Smith and Cunner Lane, LLC's right-of-way is over the entire twenty-foot corridor, part of which extends onto Plaintiffs' front lawns.

The Court agrees with Plaintiffs' position that each of Plaintiffs' "lots have two easements: one over the right of way 'as now travelled' and the other over the 'proposed roads' created by the 1929 Plan." (Pls.' Reply to Defs.' Closing Argument 15-16.) Plaintiffs' deeds grant easements both over the traveled road and over the proposed Cunner Lane. It can be inferred that the Grantor's intent was to provide Plaintiffs' predecessors access to their lots via the as-then traveled way until the proposed roads were accepted and thereafter developed. Mr. Smith's deed, in contrast, only grants an easement over the road "as now located" in 1920, nearly a decade before the proposed Cunner Lane was envisioned.

---

[11] Defendant Cunner Lane II, LLC is an exception. Cunner Lane II, LLC claims ownership of Cunner Lane and the five-foot strip pursuant to the 2017 deed from HEB. Of note, this deed does not grant any easements over the property it purports to convey. Thus, having concluded Plaintiffs own the property up to the edge of the pavement, Cunner Lane II has no rights – either in fee simple or right-of-way – to the disputed property to the edge of the pavement; Cunner Lane II only obtained title to the paved road up to the westerly and northerly edge of the pavement.

All parties agree the paved road is the contemporary traveled way. Ms. Fissmer, Mr. Siegel, and Dr. Gramse testified that the road as now paved is in the same location and of the same width that the dirt road had been for as long as each of them could remember. (Trial Tr. 61:5-11, 106:13-107:7, 116:2-20.) In addition to Plaintiffs' testimony, Plaintiffs' Exhibit 11, a photograph which Ms. Fissmer estimated was taken as long ago as the 1940's, shows the location of the dirt road to have been well-established at that time. Although there is no direct evidence of the location of the traveled road in 1920, Plaintiffs have introduced extensive undisputed evidence indicating that the traveled road has been coterminous with the now-paved road for many decades.

Defendants have not adequately demonstrated that the road referred to in each deed in their chain of title is located anywhere other than where the traveled road has been for over 60 years. As the party asserting the existence of an easement, Defendants bear the burden of proof on this issue. *Connolly v. Me. Cent. R.R. Co.*, 2011 ME 108, ¶ 16, 30 A.3d 830. The Court concludes Defendants have not carried this burden, and thus Defendants' right-of-way over the "road as now located" as described in Defendants' deeds only grants a right-of-way over the paved road.

Finally, the Court finds any requests for declaratory judgment as to the precise location of Cunner Lane are moot because the Court finds Cunner Lane II, LLC holds title in fee simple to the paved road, and Plaintiffs hold title in fee simple to the properties beyond the western and northwestern edge of the paved road.

## III. CONCLUSION

For the foregoing reasons, judgment is entered as follows.

As to Plaintiffs' complaint against Defendants Smith and Cunner Lane, LLC, Count I is dismissed as moot. Judgment is entered for Plaintiffs on Count II, pursuant to the parties' Stipulation #7, filed with the Court on June 15, 2018. Judgment is entered for Defendants on Count

III and IV. The Court finds Defendants Smith and Cunner Lane, LLC's easement was not terminated.[12] On Count V, judgment is entered for Plaintiffs. Plaintiffs have obtained fee simple title by adverse possession to the property abutting the western and northwestern edge of the paved road known as Cunner Lane. On Count VI, judgment is entered for Defendants.[13]

As to Mr. Smith's and Cunner Lane, LLC's counterclaim, Count I is dismissed as moot. On Counts II and III, judgment is entered for Plaintiffs/Counterclaim Defendants.

As to Defendant Cunner Lane II, LLC's complaint, judgment is entered for Defendant in part and for Plaintiffs in part. Cunner Lane II, LLC has no ownership rights to Brook Road and Sunrise Drive. Cunner Lane II, LLC holds title in fee simple to the paved road known as Cunner Lane up to the western and northwestern edge of the pavement. To the extent the property deeded to Defendant Cunner Lane II, LLC extends to the west and northwest beyond the western and northwestern edge of the pavement, Cunner Lane II, LLC has no ownership rights in the property.

As to Plaintiffs' complaint against Cunner Lane II, LLC, judgment is entered for Plaintiffs. To the extent the property deeded to Defendant Cunner Lane, II, LLC extends to the west and northwest beyond the western and northwestern edge of the paved road known as Cunner Lane, Plaintiffs have obtained fee simple title to this property by adverse possession.

The Clerk is directed to incorporate this Judgment and Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: October 11, 2018

Lance E. Walker, Justice
Maine Superior Court

Entered on the Docket: 10/15/18
MCV

---

[12] However, the Court finds Mr. Smith's and Cunner Lane, LLC's easement only encompasses the paved road known as Cunner Lane.
[13] The trespass issue was not argued at trial.

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-16-292

LESLIE FISSMER,
Individually and as Trustee of the
LESLIE S. FISSMER REVOCABLE
TRUST,
PATRICIA and REED GRAMSE,
KAREN and WILLIAM BURKE, and
ROBERT SIEGEL,

           Plaintiffs,

      v.

DAVID D. SMITH and
CUNNER LANE, LLC,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Plaintiffs-Kelly McDonald, Esq.
Defendants-Alan Atkins, Esq &
Aaron Mosher, Esq.**

**ORDER ON MOTION TO
DISMISS**

STATE OF MAINE
Cumberland, ss, Clerk's Office

MAR 09 2011

**RECEIVED**

## I.    Background

This case involves a dispute over the location of a deeded right of way—Cunner Lane—and the boundary lines of neighboring properties in Cape Elizabeth, Maine. Plaintiffs Leslie Fissmer, individually and as trustee of the Leslie S. Fissmer Revocable Trust; Patricia and Reed Gramse; Karen and William Burke; and Robert Siegel bring this action against defendants David Smith and Cunner Lane, LLC seeking a series of declaratory judgments and other remedies that would preserve the location of Cunner Lane as it currently exists.

### a.    Procedural History

On August 19, 2016, plaintiff Fissmer filed a verified complaint and motion for a temporary restraining order ("TRO"). The court granted the motion and issued a TRO effective until the final resolution of this case. Defendants did not file a response to the complaint, but did move to modify the TRO. On September 9, 2016, the court granted the modification to allow

1

installation of a water line on defendants' properties. Prior to the modification, defendant Smith, in the presence of his counsel, removed a wooden post on the subject property in violation of the TRO. In response, plaintiff sought contempt proceedings for remedial sanctions. On October 4, 2016, the court found defendants in contempt and issued sanctions.

On November 7, 2016, Plaintiff Fissmer filed an amended complaint, which added as plaintiffs the owners of three other properties that are accessible only via Cunner Lane. Defendants filed a motion to dismiss pursuant to M.R. Civ. P. 12(b)(7) arguing plaintiffs failed to join all necessary parties, including the fee owner of the right of way and the owners of other lots benefitted by the right of way. Plaintiffs object to the motion arguing defendants failed to demonstrate that there are third parties with an interest in the litigation; to the extent that any third parties do exist, they are not necessary parties; and if third parties are necessary, the proper remedy is joinder, not dismissal of the action.

### b. Facts

Plaintiff Fissmer owns real property situated at 20 Cunner Lane in the Town of Cape Elizabeth, Maine. Plaintiffs Patricia and Reed Gramse own the property located at 12 Cunner Lane. Plaintiffs Karen and William Burke and Robert Siegel own lots on Brooke Road, which are only accessible by way of Cunner Lane. Defendants own the properties located at 19 and 21 Cunner Lane. Parties' properties are all benefitted by a deeded right of way over Cunner Lane. Defendants assert the Harry E. Baker Company owns in fee the land burdened by the Cunner Lane easement.

Cunner Lane has been in its present location since the 1920s. Defendants acquired their property in 1998 and shortly thereafter defendant Smith paid to have Cunner Lane paved. This dispute arose when defendants hired a company to survey their properties. The survey found the

2

current physical location of Cunner Lane is not the location of the deeded easement. Defendants argue the survey proves the paved road is on their properties, while the deeded easement runs across property plaintiff Fissmer asserts is part of her lot.

Defendants wish to relocate a stone wall built on their properties to the boundary between their lots and the deeded easement as shown on the survey map. The wall would block the paved lane and access to plaintiffs' properties. Shortly before the initial complaint was filed, defendant Smith began drilling holes in the road and installing cones that blocked Cunner Lane. He also represented to plaintiff Fissmer that his contractors were going to remove stones, vegetation, and earth from land she believes to be her lawn, but the survey shows as part of defendants' properties.

For the reasons discussed below, the motion to dismiss is denied in part. The owners/possessors of any servient estates or properties abutting Cunner Lane and any unnamed lot owners/possessors with a right of way over Cunner Lane must be joined in this action as necessary parties.

## II. Discussion

### a. Maine Rules of Civil Procedure 12(b)(7)

A party may move to dismiss an action for "failure to join a party under Rule 19." M.R. Civ. P. 12(b)(7); *Sanseverino v. Gregor*, 2011 ME 8, ¶ 8, 10 A.3d 735. "The joinder standard prescribed in Rule 19(a)(1) 'is designated to protect those who already are parties by requiring the presence of all persons who have an interest in the litigation so that any relief that may be awarded will effectively and completely adjudicate the dispute.'" *Efstathiou v. Payeur*, 456 A.2d 891, 893 (Me. 1983) (quoting 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1604, at 36 (1972)). Joinder is the appropriate remedy, not dismissal, when a necessary party has not

3

been joined in an action and is subject to service of process. *Id.*; *Nemon v. Summit Floors, Inc.*, 520 A.2d 1310, 1313 (Me. 1987); *Caron v. Auburn*, 567 A.2d 66, 68 (Me. 1989); *Larrabee v. Town of Knox*, 2000 ME 15, ¶ 11, 744 A.2d 544. "Only when joinder is not possible may the court determine that the action cannot proceed in the absence of a party deemed 'indispensable.'" *Caron*, 567 A.2d at 68 (quoting M.R. Civ. P. 19(b)).

The court may *sua sponte* "take notice of the absence of a necessary party . . . ." *Ocwen Fed. Bank v. Gile*, 2001 ME 120, ¶ 16, 777 A.2d 275. Thus, the court does not address plaintiffs' argument that defendants have not proven the existence of necessary third parties. To the extent they are identified through due diligence, they must be joined in accordance with the terms of this order.

### b. Maine Rules of Civil Procedure 19

> A person who is subject to service of process shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

M.R. Civ. P. 19(a). The Law Court has addressed a number of cases disputing whether third parties with varying property interests were necessary parties pursuant to Rule 19(a). In *Avaunt v. Town of Gray*, the Court held abutting landowners were not necessary parties when the case concerned whether the road used to access the properties was private or public because the unnamed abutters "right to use the road (either as a public road or a private road with a public easement)" was not affected by the declaratory judgment. 634 A.2d 1258, 1261 (Me. 1993).

In *Muther v. Broad Cove Shore Ass'n*, the parties disputed the scope of rights the defendant Association members had in an easement that crossed the plaintiffs' property. 2009

4

ME 37, ¶ 9, 968 A.2d 539. The Court held that unnamed individuals with easement rights not derived from Association membership were not necessary parties because the settlement agreement reached was only binding on the named parties and did not prevent the unnamed individuals from enforcing their separate rights. *Id.*

In *Sanseverino v. Gregor*, the Court held that unnamed owners of other lots in a development were not necessary parties, even though they were all subject to the same restrictive covenant challenged in the action. 2011 ME 8, ¶ 8, 10 A.3d 735. The court reasoned as follows:

> Failure to join other lot owners in the development did not prevent the parties "from fully adjudicating the underlying dispute," did not expose the parties "to multiple or inconsistent obligations," and did not prejudice the interests of the absent lot owners . . . . The court specifically limited its findings and its judgment to the current commercial or business activities on the Trust's lots, and the court's judgment does not impede the ability of unnamed parties to enforce their rights in the future.

*Id.* (quoting *Muther,* 2009 ME 37, ¶ 9, 968 A.2d 539) (internal citations omitted).

*Efstathiou v. Payeur* involved a dispute between neighbors over the location of property lines and whether, given those boundaries, the plaintiff had access to a cul-de-sac. 456 A.2d 891 (Me. 1983). The cul-de-sac had been dedicated to, and accepted by, the Town of Ogunquit. *Id.* at 891. The Court held the Town was a necessary party because absent joinder it would be "free to relitigate the way's boundaries" and because it had "a clear interest in participating in any suit purporting to effect the boundaries of its public ways." *Id.* at 893.

As in *Efstathiou*, this case involves a dispute over the location of property lines and the means of access to parties' properties. Plaintiffs request that the court "declare the Location of Cunner Lane" and "permanently enjoin defendants from blocking Cunner Lane." The demand for judgment does not limit the request for declaration of the location of the road to just the portion between plaintiff Fissmer and defendants' properties. The court cannot fully adjudicate

-5

this action absent the owners/possessors of lots burdened or bounded by the right of way because those owners would not be bound by the court's decision and could seek to relitigate the boundaries. The owners/possessors also have an interest in this suit as it seeks to declare the boundaries of Cunner Lane, which would impact the boundaries of their properties. Therefore, they are necessary under both the Rule 19(a)(1) and (2) joinder standards.

Owners or possessors of properties with a deeded easement granting a right of way in Cunner Lane are also necessary parties pursuant to both Rule 19 standards. The amended complaint alleges the right of way provides the only means of access to lots owned by unnamed parties. (Am. Compl. ¶ 12.) This case is distinguishable from *Avaunt* because its resolution could impact the dominant estate owners/possessors' ability to use the easement to access their properties. M.R. Civ. P. 19(a)(2)(i); *See Sleeper v. Loring*, 2013 ME 112, ¶ 22, 83 A.3d 769 (ordering the trial court on remand to evaluate whether other lot owners with easement rights in the subject right of way might be prejudiced by the decision on remand requiring them to be joined in the action pursuant to M.R. Civ. P. 19(a)). Defendants seek to block the road as it has existed for almost a century. Meanwhile, plaintiff Fissmer claims if the location of the deeded easement is across property she considers to be hers, then the easement has been extinguished by adverse possession and/or abandonment.[1] Although unlikely, it is possible that the court could find there is no right of way across the existing road and the original deeded easement was extinguished. Such a result would be highly prejudicial to owners/possessors of the dominant estates, and they would "be free to relitigate" the easements location if not joined. *Efstathiou,*

---

[1] The joinder of the Gramses, the Burkes, and Mr. Siegel in this action may have sufficiently protected the interests of other similarly situated dominant estate holders who rely on Cunner Lane for access to their properties. However, they joined plaintiff Fissmer in her complaint, which contains the claims for adverse possession and abandonment of the easement across her property. Other unnamed lot owners may not wish to join in those claims in order to assert their interest in the deeded easement regardless of its location.

6

456 A.2d at 893. Therefore, they are also necessary parties.

## III.    Conclusion

For the foregoing reasons, Defendants David Smith and Cunner Lane, LLC's motion to dismiss is DENIED in part.

IT IS ORDERED that

1. Plaintiffs shall join within 30 days all persons owning land burdened by the Cunner Lane easement or abutting such easement;

2. Plaintiffs shall join within 30 days all persons owning property benefitted by a right of way in Cunner Lane located in Cape Elizabeth, Maine; and

3. Defendants shall timely respond to the amended complaint pursuant to M.R. Civ. P. 12.

DATED: ~~February~~ _March_ 3, 2017

_____

Hon. Lanee Walker
Justice, Maine Superior Court

7



STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-16-292

LESLIE FISSMER,
Individually and as Trustee of the
LESLIE S. FISSMER REVOCABLE
TRUST
        Plaintiff,

v.

DAVID D. SMITH and
CUNNER LANE, LLC

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER ON PLAINTIFF'S
MOTION FOR CONTEMPT
AND DEFENDANTS' MOTION
FOR SANCTIONS

STATE OF MAINE
Cumberland ss. Clerk's Office

OCT 04 2016

RECEIVED

Before the court is Plaintiff's (hereafter "Fissmer") motion for contempt, M.R. Civ. P. 66(d), and Defendants' motion for sanctions. M.R. Civ. P. 11. An evidentiary hearing on the motion for contempt was held on September 30, 2016. Plaintiff was present with her attorneys. Defendants did not appear, save through their attorneys. Based on the following, Fissmer's motion for contempt is granted and as a natural consequence, Defendants' motion for sanctions is denied.

I.    FACTS

As a result of Plaintiff's contemporary filing of a motion for temporary restraining order with the initial pleadings in this case, the Court issued a Temporary Restraining Order on August 22, 2016 at 9:23 a.m. Relevant to the present motion for contempt, the Order stated that "Defendants are further restrained from removing any post that was placed by Plaintiff near the end of Cunner Lane, near Plaintiff's property." Fissmer testified that on August 26, 2016, she observed Defendant Smith in the presence of his attorney, remove a 4"x4" wooden post very near the end of her driveway. Fissmer's testimony was undisputed and further corroborated by photographs she took of the

1

incident which were admitted as Plaintiff's Exhibits 1-6. Fissmer testified that she feels intimidated by Defendant Smith and that she is concerned about what she perceives as his flagrant disregard of a lawful court order and what that might portend for her peace of mind as the present lawsuit progresses.

Defendants did not call any witnesses and did not offer any other evidence. Attorney Atkins' argument, which took on a different form than that made in his opposition to Fissmer's motion, is that the post in question is some 26 feet from Fissmer's property and therefore does not fall within the court's proscription that Defendant not remove any post placed by Plaintiff located *near* Plaintiff's property, insofar as 26 feet is not near enough to be considered near Plaintiff's property.

## II.    DISCUSSION

### A.    Motion for Contempt, Rule 66(d)

A motion for contempt pursuant to Rule 66(d) may be granted if the court finds by clear and convincing evidence that (1) the alleged contemnor has failed or refused to perform an act required or continues to do an act prohibited by a court order, and (2) it is within the alleged contemnor's power to perform the act required or cease performance of the act prohibited.

The court finds by clear and convincing evidence that Defendant Smith has violated the Order and that it was well within his power to comply with the Order. Therefore, Defendant Smith is in contempt of the Temporary Restraining Order.[1] The argument that 26 feet is not near enough to fall within the prohibition of the Order is hollow and was only made at the hearing for the first time. As a practical matter, parties

---

[1] Fissmer stated at the hearing that the post has been restored to its original position.

2

subject to a Temporary Restraining Order may reasonably be expected to conduct themselves more cautiously than to cavalierly act in a way that violates it under the auspices that the conduct falls just outside the prohibition. Second, the alleged conduct was performed by Mr. Smith while in the presence of his attorney of record in the present case, somewhat undermining the Defendant's original argument that he thought the post was on his property and therefore, he believed that he could remove it. On its face the Order does not admit to such a tortured interpretation. In fact the Order speaks of removal of a post near Plaintiff's property, which by definition would include posts on other people's property. Finally, there was no other post with which the Order's prohibition could reasonably have been confused. The post in question sits a couple of paces adjacent to Fissmer's driveway. The fortuity that the ownership of that land may be in dispute somewhat misses the point of a Temporary Restraining Order generally and this one in particular, which is to maintain the status quo while the underlying dispute is resolved in an orderly manner through the course of litigation.

As an alternative to coercive sanctions that are available under the Rule, the Court imposes the following remedial sanctions: attorney's fees and costs incurred by Fissmer arising out of or connected to the removal of the post, attempted communication between attorneys for the parties regarding the same, time expended on the motion for contempt and motion for sanctions, along with time to prepare for and attend the hearing on the motion for contempt.

## III. CONCLUSION

Based on the foregoing, Plaintiff's motion for contempt is granted.

Defendants' motion for sanctions is denied.[2]

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date:   October 3, 2016

Lance E. Walker
Justice, Superior Court

---

[2] Defendants' motion for sanctions is grounded upon the argument that the motion for contempt is frivolous. Because the motion for contempt is granted, Defendants' motion for sanctions is necessarily denied.

4